J-A10016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| E.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| H.K., A.S., AND A.S. | |
| Appellee | No. 1752 MDA 2014 |

Appeal from the Order Entered September 26, 2014
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 10580-C OF 2005

BEFORE:  GANTMAN, P.J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                  **FILED AUGUST 17, 2015**

Appellant, E.D., appeals from the September 26, 2014 order denying her petition to modify the existing custody order and setting forth a custody schedule between herself and Appellee, H.K., her former girlfriend, with respect to the minor female child, H.M.S., born in January 2005.[1]  After careful review, we vacate and remand for reconsideration and further proceedings if necessary.

The trial court set forth the following factual and procedural history of this case, as follows.

> The current custody Order, dated July 16, 2014, awards [Appellee], primary physical custody of the child and partial physical custody to [Appellant] with

---

[1] H.M.S. is not the biological child of E.D. and H.K., as discussed *infra*.

shared legal custody to both parties. [Appellant]'s partial physical custody consists of every other weekend from Friday until Sunday, every Wednesday evening, and one week of vacation each June, July, and August. H.M.S.'s natural parents are … [A.S.] and [A.S.[2]] [A.S., the child's biological mother,] and [Appellant] are first cousins. The natural parents had a difficult time taking care of H.M.S. in or around May of 2005 and they began asking [Appellant] to help them take care of the child. [Appellant] testified that in November of 2005, the natural parents indicated to [Appellant] they wanted her to take care of [H.M.S.] On November 29, 2005, a written stipulation was entered between the natural parents and [Appellant] and [Appellee].[3] [Appellant] and [Appellee] were in a relationship and were residing together at the time. The written stipulation was adopted by Court order which awarded [Appellant] and [Appellee] primary physical custody and legal custody of the child. Therefore, [Appellant] and [Appellee] had primary physical custody and legal custody of the child from November 29, 2005 until 2007 when the parties ended their relationship. [Appellant] and [Appellee] then had a verbal agreement to share physical custody. Their agreement provided three (3) days with one party and four (4) days with the other, on an alternating basis.

On January 23, 2007, [Appellant] sought primary physical custody of [H.M.S] against [Appellee] claiming that it was too difficult for the child to live with the parties on a shared physical

_____

[2] H.M.S.'s natural parents, A.S. and A.S., were not parties in the subject proceedings before the trial court. Likewise, they are not parties in this appeal.

[3] We note that preliminarily an order was entered into between only Appellant and the natural parents on September 20, 2005. By agreement of the parties, said order was modified on November 29, 2005 to include Appellee.

custody basis. [On March 8, 2007, a temporary order was entered, providing Appellant and Appellee would continue to have shared physical and legal custody of H.M.S.] A custody trial took place and Judge Joseph Augello issued an opinion on October 9, 2007 awarding the parties shared legal custody, [Appellant] primary physical custody and [Appellee] partial physical custody on alternating weeks from Friday at 5:00 p.m. until Tuesday at 6:00 p.m. and an extra six (6) hours block of time on another day.

In the spring of 2013, a dependency petition was filed by Children and Youth alleging that [Appellant] was permitting her teenage son to smoke marijuana with her and that she was misusing her prescription medication. Due to the dependency petition, H.M.S. was removed from [Appellant]'s home in addition to the three (3) other children residing with [Appellant]. Pursuant to the dependency court order, temporary physical and legal custody of the child was then awarded to [Appellee] during the summer of 2013. On September 9, 2013, [Appellant] was required to complete services pursuant to the Family Service Plan and had two hours of supervised visits with H.M.S. [On January 13, 2014, a]fter the dependency was closed in December of 2013, [Appellant] filed a Petition to Modify the custody Order and to reinstate her contact.

Trial Court Opinion, 11/17/14, at 2-3 (some citations omitted).

A hearing on Appellant's petition occurred on September 3 and 19, 2014. Appellant testified on her own behalf and presented the testimony of her boyfriend, E.P.; and her father and mother, F.K. and N.K. Appellee testified on her own behalf and presented the testimony of her mother, L.K.; Carol McMullen, a friend of Appellee and H.M.S. from church; and Jo Ann Jason, who is an acquaintance of Appellee and H.M.S. from H.M.S.'s softball

league. In addition, H.M.S. testified *in camera*, in the presence of the parties' counsel.

At the time of the hearing, Appellant testified that she is the biological mother of two male children, C.C., age sixteen, and C.D., age seven, and one female child, A.D., age five. N.T., 9/3/14, at 6-7. Appellant's younger children, C.D. and A.D., were born after she and Appellee separated, during her marriage to C.D.[4] N.T., 9/19/14, at 62. Appellant lives in West Wyoming, in Luzerne County, with her biological children, her boyfriend, E.P., and his eleven-year-old daughter, O.P. N.T., 9/3/14, at 6-7. Appellant is not employed. *Id.* at 7.

Appellee lives with her mother, L.K., and other relatives in Laceyville, in Wyoming County, in a home located on a 200-acre organic dairy farm. *Id.* at 9, 11-12. Appellee's home is a driving distance of approximately one hour and 15 minutes from Appellant's home. N.T., 9/19/14, at 56. Appellee is employed as a marketing consultant, and she makes her own work schedule. *Id.* at 9.

Appellant testified that, in the spring of 2013, a dependency action was initiated involving H.M.S. and her biological children due to a report made by her husband, C.D., alleging that Appellant smoked marijuana with her then 15-year-old son, C.C. N.T., 9/3/14, at 20. In addition, arising

_____

[4] At the time of the subject proceedings, divorce litigation was pending between Appellant and C.D.

- 4 -

from the same allegations, Appellant was criminally charged with endangering the welfare of children. Appellant testified that C.D.'s allegations were false. *Id.* at 20. Appellant testified that, as a result of the dependency action, her biological children were placed in the temporary custody of her parents. *Id.* at 22. By court order dated July 5, 2013, H.M.S. was placed in the custody of Appellee. *Id.* at 22, 143-144.

In December 2013, the dependency action was closed, and in May 2014, the criminal charges against Appellant were dismissed. *Id.* at 23, 153-154. In addition, Appellant had appealed the indicated status for child abuse that was lodged against her during the dependency action, and her appeal was granted as the accusations were unfounded and the case was closed. *Id.* at 24-25, 154.

On January 13, 2014, when Appellant filed the petition to modify the existing custody order, H.M.S. had been in Appellee's primary physical custody for six months. By the time of the hearing, H.M.S. had been in Appellee's primary custody for more than 14 months, and she had attended third grade in Appellee's school district, Wyalusing Valley. H.M.S. testified *in camera*, at which time she was nine years old and had just started fourth grade. H.M.S. testified that she likes her new school and has friends there,

but her preference was to return to the Wyoming Area School District.[5] N.T., 9/19/14, at 65, 67-68. She testified as follows on inquiry by the trial court.

> Q. So, how do you feel about where you're living and going to school right now? How does that make you feel?
>
> A. I kind of like it.
>
> Q. Would you want it to change?
>
> A. Yeah. I want to go to Wyoming Area. I had more friends there.
>
> …
>
> Q. [S]o, let me understand what you're saying. Are you saying that you would rather go to Wyoming Area but still live with [Appellee]; or, are you saying you rather go to Wyoming Area and - -
>
> A. I want to live with [Appellant] and go to Wyoming Area.
>
> …
>
> Q. If you had a magic wand and you can make something come true, what is it that that would be?
>
> A. That I can go to Wyoming Area and see my friends.
>
> Q. So you miss Wyoming Area because you miss friends, or do you miss Wyoming Area because you miss going to school there?

---

[5] H.M.S. attended the Wyoming Area School District while in Appellant's primary physical custody. N.T., 9/3/14, at 57.

> A. Miss going to school. I've been going to school there since kindergarten.

*Id.* at 89, 91-92.

On September 26, 2014, the trial court denied the petition to modify the existing custody order. The subject order made permanent the award of shared legal custody between the parties, maintained primary physical custody in Appellee, and partial physical custody in Appellant on alternating weekends, from Friday at 5:00 p.m. until Sunday at 7:00 p.m., and every Wednesday from 5:00 p.m. to 7:00 p.m. In addition, the order set forth a holiday schedule.

On October 16, 2014, Appellant timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i). On November 17, 2014, the trial court issued its Rule 1925(a) opinion.

On appeal, Appellant sets forth the following issue for our review.

> [1.] Whether the trial court committed an error of law and/or abuse of discretion in failing to properly apply the statutory factors set forth in 23 Pa.C.S.A. § 5328(a) requiring a conclusion that it was in the best interest and welfare of the minor child to return and/or transfer custody to [] Appellant and whether said decision was against the weight of the evidence[?]

Appellant's Brief at 26.[6]

The scope and standard of review in custody matters is as follows.

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination…. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

> *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (*quoting* **Bovard v. Baker**, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest

---

[6] We note that Appellant withdrew the other issue raised in her Rule 1925(a)(2)(i) statement asserting that the trial court failed to address the Section 5328(a) factors, based on the trial court's November 17, 2014 Rule 1925(a) opinion.

> of the child was careful and thorough, and we are unable to find any abuse of discretion.
>
> ***R.M.G., Jr.***, ***supra*** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. ***Ketterer v. Seifert***, 902 A.2d 533, 539 (Pa. Super. 2006).

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) (parallel citations omitted).

Further, we have stated the following.

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006), *quoting* ***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006), *quoting* ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004).

Relevant to this custody case are the factors set forth in Section 5328(a) of the Child Custody Act (the Act), 23 Pa.C.S.A. §§ 5321-5340, which provides as follows.

- 9 -

**§ 5328.   Factors to consider when awarding custody.**

**(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety

measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[7]

This Court has stated that, "[**a**]**ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a

_____

[7] The Act was amended, effective January 1, 2014, to include the additional factor at Section 5328(a)(2.1).

custody order." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011)

(emphasis in original; citation omitted).

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.***, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013)….
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, ***supra*** at 822-823. With these standards in mind, we turn to the merits of this appeal.

Instantly, in the subject order, without setting forth with specificity its reasons in support of each factor, the trial court nevertheless stated that it considered the Section 5328(a) custody factors in reaching its custody determination. Custody Order, 9/26/14, at 2-3.[8] In its Rule 1925(a)

---

[8] The custody order does not contain pagination. For ease of review we have assigned each page a sequential page number.

opinion, the trial court remedied said error and set forth its mandatory assessment of the custody factors. Trial Court Opinion, 11/17/14, at 6-23.

On appeal, Appellant argues that the trial court committed an error of law and/or abused its discretion in failing to weigh the Section 5328(a) custody factors in her favor. Appellant's Brief at 29. Specifically, Appellant addresses each factor listed in Section 5328(a) in the order they appear. The crux of her argument is that H.M.S. should be returned to her primary physical custody because the dependency action has been closed, and the criminal action against her dismissed. *Id.* at 46.

A review of the trial court's opinion demonstrates that the trial court found a majority of the factors did not weigh in favor of either Appellant or Appellee. *See* Trial Court Opinion, 11/17/14, at 6-23. Specifically, under Section 5328(a)(1), the trial court found that both parties "testified as to problems they were having with each other regarding the other party not likely encouraging and permitting frequent and continuing contact between the child and that party." Trial Court Opinion, 11/17/14, at 6. In its Rule 1925(a) opinion, the trial court reviewed the testimony involving the parties' allegations and defenses thereto. *Id.* at 6-8. The trial court concluded that, "[b]ased on the testimony of the parties and witnesses, and the parties' explanation for their conduct, the [trial] court finds that there was not sufficient testimony to indicate that either party would be more likely than

- 13 -

the other to encourage and permit frequent contact versus the other." *Id.* at 8.

Next, in regards to Section 5328(a)(3), the parental duties performed by each party on behalf of the child, the trial court found that, "both parties provide for the daily needs of the child, through the performance of parental duties." *Id.* at 11. Likewise, the trial court did not find significant the factors listed in Section 5328(a)(9), which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs, and Section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, education and special needs of the child. Regarding these two factors, the trial court found that, "[b]oth parties offer their love and support to the child. Both parties have the child involved in sports activities and both parties do homework with the child each night when the child is in their custody." *Id.* at 20. The testimonial evidence of the parties, H.M.S., and the witnesses supports this finding. Additionally, the trial court found that pursuant to Section 5328(a)(11), although the distance between the parties homes was one hour and 15 minutes, it was in H.M.S.'s best interest to spend time with both parents. *Id.*

Similarly, with respect to Section 5328(a)(13), the level of conflict between the parties, and the willingness and ability of the parties to cooperate with one another, "both [Appellant] and [Appellee] indicated in

their testimony that the other party is not willing and able to cooperate with the other." *Id.* at 21. The trial court found that, while "communication between the parties must improve in order to serve the best interests and welfare of the child[,]" "there was no testimony to support the belief that one party versus the other would in any way cooperate better than or be ready to inform the other party of information regarding the child." *Id.* at 22.

Finally, with respect to Section 5328(a)(12), each party's availability to care for the child or ability to make appropriate child-care arrangements, the trial court found as follows.

> Both parties are available to care for the child and both parties are able to make appropriate child-care arrangements. [Appellant] testified that she is a "stay at home" mother and therefore available to take care of the child. Her father and mother are also available to help if needed. [Appellee] testified that although she works full time, her work is flexible which enable[s] her to take care of H.M.S. In the event she is not available, her mother resides in the same home and she is able to help if needed. Also, [Appellee]'s grandmother can [ ] help with the bus stop if needed. In the summer, [Appellee] also has an accessible day care to use if needed. Therefore, this factor does not weigh in favor of one party versus the other.

*Id.* at 21. The testimonial evidence supports the trial court's findings. Accordingly, we discern no abuse of discretion by the court in its factual findings with respect to Section 5328(a)(1), (3), (9), (10), (11), (12) and (13), and the weight the court placed on these factors.

Notably, however, there were only three factors the trial court found weighed in favor of either Appellant or Appellee. Specifically, those factors were, Section 5328(a)(4), the need for stability and continuity in the child's education, family life and community life, Section 5328(a)(6), the child's relationship with siblings, and Section 5328(a)(7), the well-reasoned preference of the child.

The trial court weighed Section 5328(a)(4), the need for stability and continuity in the child's education, family life and community life, significantly in favor of Appellee. The trial court found as follows.

> Based on the parties' testimony, it appears that both parties show stability and continuity in family life; however, it appears that [Appellee] offers more stability and continuity in the child's education and community life. [Appellee] demonstrated stability in insuring that the child arrives to school on time and does not have excessive absences as compared to the prior years of tardies and absences when the child was under [Appellant]'s care. Furthermore, although the child is involved in activities with both parties, the child also is involved with her church under [Appellee]'s care. The child participates in her church by being the torch bearer and by working with the elderly. The court finds that by insuring the child arrives promptly to school, not having excessive absences, being involved in church activities by helping people[,] are lessons in life that the child is learning and can utilize in her future as a result of being under [Appellee]'s care.

*Id.* at 15.

The testimonial and documentary evidence the trial court relied on in reaching this conclusion is as follows. During Appellee's direct examination,

her counsel introduced H.M.S.'s report cards from kindergarten through third grade. N.T., 9/19/14, at 23. She testified that Appellant lived five minutes from the school that H.M.S. attended while in her primary custody, which was from kindergarten through second grade. *Id.* at 23-24. Appellee testified that the kindergarten report card indicated that H.M.S. had four absences and eleven tardies; the first grade report card indicated that H.M.S. had thirteen absences and five tardies; the second grade report card indicated that H.M.S. had eleven absences and nine tardies. *Id.* at 24. The third grade report card, when H.M.S. was in Appellee's primary physical custody, indicated that H.M.S. had two and one-half absences and no tardies. *Id.* Nowhere in the record, however, is any evidence explaining the reasons for H.M.S. arriving to school late, or being absent. It is unclear whether H.M.S. was sick, attending doctor's appointments, had a death in the family, etc., during these periods of time. Therefore, it is speculative to assume these absences and tardies reflect negatively on Appellant, absent any support in the record.

Further, and arguably more importantly, the record indicates H.M.S. was thriving in school under Appellant's care. Appellant testified that in kindergarten H.M.S.'s school did not give grades, but in first and second grade Appellant received mostly straight A's, bringing home B's only in

math. N.T., 9/3/14, at 56-58.[9] Specifically, Appellant testified that the grades H.M.S. received were as follows.

> Q. I'm going to show you a document which I'm marking P-7 for identification. Would you please identify this?
>
> A. This is [H.M.S.]'s first grade report card.
>
> …
>
> Q. Okay. Can you please tell the Judge the grades that your child had in first grade?
>
> A. Reading first semester, they don't give grades. She got an S. And then she got an A, A, A-. English first semester, there was no grade. And then she got an A, A, A-. Spelling, there was no grade and then A, A, A. Mathematics was an S. Second was A-, B-, B.
>
> Q. [H.M.S.] likes school?
>
> A. She loves it.
>
> Q. I'm going to show you what I'm marking as P-8. Can you please tell us what P-8 is?
>
> A. This is [H.M.S.]'s second grade report card.
>
> Q. And can you please tell us her grades for grade two?
>
> …

_____

[9] We note that the exhibits entered at trial were not made part of the certified record. Nevertheless, Appellant testified to the content of the exhibits, and thus, for purposes of our review we have quoted from the trial testimony.

A. Reading, A-, A-, A-, A-; English, A, A, A-, A-; Spelling, A, A, A, A; Math, A, B, B, A-.

Q. Are you happy with her grades?

A. Yes.

Q. And this was while she was in your primary physical custody?

A. Correct.

Q. I'm now going to show you what's been marked P-10 for identification and ask you to identify P-10. What is P-10?

A. This was [H.M.S]'s first quarter report card from Wyalusing.

Q. Now, why was she - - when was this? This was the first semester of what year?

A. Of last year, third grade.

Q. And she was in the custody of whom at that point?

A. [Appellee].

…

Q. Can you please tell the Court what her grades were while she was in the custody of [Appellee] in Wyalusing?

A. Reading was an 86, B. Math was an 88, B. Spelling was a 97, A. Composition was a 92, B. Science was an 83, C. Social Studies was a 77, D.

*Id.* at 56-59. As evidenced by this testimony, the trial court's conclusion that H.M.S. should remain in Appellee's care based on her attendance record clearly fails to take into consideration the far more important issue, H.M.S.'s

- 19 -

academic success under Appellant's care. Further, the record indicates that after H.M.S. was removed to Appellee's custody, Appellee was not providing Appellant with H.M.S.'s report card upon request. *Id.* at 42-43.

In the same portion of her testimony, Appellant stated that despite multiple requests to Appellee for H.M.S.'s softball schedule, Appellee continued to ignore her requests and failed to provide her with the schedule. *Id.* at 43. Appellant's testimony indicates that when H.M.S. resided with her, H.M.S was involved in bowling, softball, and dance twice a week, taking tap, jazz and ballet. *Id.* at 61. Appellant provided photographic evidence of H.M.S.'s extensive trophy collection earned throughout her several seasons in her bowling league, noting however, that last season Appellant only received one trophy as she missed one-quarter of the season. *Id.* at 64

With respect to H.M.S.'s involvement in Appellee's church, Appellee testified that she belongs to St. Luke's Episcopal Church in Scranton. N.T., 9/19/14, at 18. Appellee, upon identifying photographs of H.M.S. introduced as exhibits, testified to the following.

> [H.M.S.] loves to help out at the church with an event that we have. It's called Senior Base. It's where we invite the seniors that live in the downtown high rises to come in. We feed them, and we have entertainment and door prices [sic].

*Id.* at 15-16. Appellant, however, also testified that when H.M.S. is in her care every other weekend Appellant, E.P., H.M.S. and all of the other three children attend church as a family. N.T., 9/3/14, at 69. Accordingly, the

- 20 -

record evidence demonstrates that Appellant and Appellee are both making sure that H.M.S. regularly attends church. Accordingly, we conclude that the record does not support the trial court's finding that this factor weighs in favor of Appellee.

Turning to the next factor, Section 5328(a)(6), the child's relationship with siblings, the trial court stated that "[a]lthough the tenet of custody law is to raise siblings together, that tenet is only one factor and it is not controlling." Trial Court Opinion, 11/17/14, at 27 (citation omitted). Appellant has three biological children, as well as E.P.'s daughter, O.P., living in her home. H.M.S. refers to all of these children as her brothers and sisters. N.T., 9/3/14, at 79. Additionally, H.M.S. has two biological younger sisters, who live with H.M.S.'s biological mother, but H.M.S. believes they are her cousins.[10] *Id.* at 76. Appellant testified that these two children are in the same bowling league as H.M.S., and she sees them while bowling on Saturday mornings. *Id.* The trial court reasoned that H.M.S.'s "stability and her school attendance are compelling factors which outweigh the policy of raising H.M.S. with her cousins whom she believes are her brothers and sisters."[11] Trial Court Opinion, 11/17/14, at 17.

_____

[10] Appellant testified that they will eventually inform H.M.S. that the girls are her sisters.

[11] As clarified above, the opposite is actually true. The two girls the trial court is referencing are actually H.M.S.'s biological siblings, who live with

*(Footnote Continued Next Page)*

Additionally, as to Section 5328(a)(7), the well-reasoned preference of the child based on the child's maturity and judgment, the trial court concluded that although H.M.S. has expressed that she would rather live with Appellant, "the child's preference is an important factor to be considered in a custody action, [but] a child's expressed wishes are not controlling[.]" *Id.* at 19 (citation omitted); *see also **Cardamone v. Elshoff***, 659 A.2d 575, 583 (Pa. Super. 1995) (citations omitted). Moreover, this Court has explained that, "[t]he weight to be given to a child's preference can best be determined by the judge before whom the child appears." *Id.* (citations omitted). In this case, the trial court considered H.M.S.'s preference but concluded it was not determinative for the following reasons.

> Although H.M.S. testified that she prefers to reside with [Appellant] and attend Wyoming Area, the [trial c]ourt does not believe it is in the child's best interest to reside with [Appellant]. Based on the testimony of witnesses and parties, [Appellee] offers H.M.S. a more stable home environment and insures that she is thriving academically. When [Appellant] was in charge of taking H.M.S. to school from Kindergarten through second (2nd) grade, [Appellant] exhibited a consistent pattern of H.M.S. having excessive tardiness and absences from school. As the child gets older, the school subjects tend to be more complicated and should H.M.S. continue to miss school on a consistent basis, her grades would more than likely be je[o]p[a]rdized. Also, [Appellee]

*(Footnote Continued)* ───────────────

H.M.S.'s biological mother, but H.M.S. believes are her cousins. N.T., 9/3/14, at 76.

- 22 -

> is insuring that [the] child thrives not only academically, but also spiritually by having the child involved in church activities and by helping the elderly. Th[is] forms an appreciation of helping others in life. Aside from church activities, [Appellee] is also permitting the child to try new activities such as karate and girl scouts.

Trial Court Opinion, 11/17/14, at 19. Further, the trial court acknowledged that H.M.S. calls Appellee "Meme," and Appellant "Mommy," nevertheless, the trial court concluded that Appellee "offers H.M.S. with a more stable home environment and insures that she is thriving academically." ***Id.***

After careful review, we conclude the trial court abused its discretion. Our standard of review dictates that we must examine the record evidence to see if the trial court's conclusion is supported by the record. ***A.V.***, ***supra*** at 820. The trial court elected not to modify custody despite its determination that Sections 5328(a)(6) and (7) did weigh in Appellant's favor, and to base its decision solely on weighing Section 5328(a)(4) in Appellee's favor. The trial court placed undue emphasis on the amount of times H.M.S. was late to, or missed school, without any evidence that said tardies or absences in any way affected her performance or in any way were related to adverse parenting on the part of Appellant. Furthermore, the record evidence illustrated that H.M.S. was actually thriving academically under Appellant's care, and has had a decline in her academic performance over the year she resided in Appellee's care.

Because the trial court found only Section 5328(a)(4) in favor of Appellee, a factor which we conclude was an abuse of discretion as the record evidence does not support the trial court's finding, we are constrained to vacate the trial court's custody order.

Based on the foregoing, we conclude the trial court abused its discretion when it denied Appellant's petition for modification. **_See Johns v. Cioci_**, 865 A.2d 932, 944 (Pa. Super. 2004). On remand, the trial court shall reconsider the hearing testimony from September 3rd and 19th, and if necessary, conduct a new custody hearing. Accordingly, the trial court's September 26, 2014 order is vacated, and the case is remanded for further proceedings, consistent with this memorandum.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2015

- 24 -